UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



MARITZA PUBILL-RIVERA

**Plaintiff**

v.                                               Civil No. 97-2815 (JAG)

JOSE O. CURET, et al,

**Defendants**

---

OPINION AND ORDER

GARCIA-GREGORY, D. J.

Plaintiff Maritza Pubill Seize("plaintiff") brought suit pursuant to 42 U.S.C. § 1983 (for violation of her son's Eighth Amendment rights)[1]. The named defendants are: José C. Curet, ("Dr. Curet"), in his personal and official capacity as Director of the Correctional Health Division ("Correctional Health"); Dr. José A. Madera, ("Dr. Madera"), in his personal and official capacity as Medical Director of the University Hospital Ramón Ruiz Arnau in Bayamón ("Regional Hospital"); and doctors Amaury Hernández, Ramón L. Rivera Schneider, Jellytza Maldonado Rondón, Neisa Torres Reyes, and Nilma Rosado Villanueva. On January 26, 2001, co-defendants

---

[1] Amaury Seise Pubill ("Amaury") was born to Maritza Pubill on August 8, 1974. Amaury was an inmate in the Bayamon Regional jail when he died from AIDS complications.

AO 72A
(Rev. 8/82)

Civil No. 97-2815(JAG)                                                2

Dr. Curet and Dr. Madera moved for dismissal of the complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6) alleging that plaintiff failed to state a claim upon which relief could be granted (Docket No. 57, 70, 94)[2]. For the reasons discussed below, defendants' motion is **GRANTED**.

### FACTUAL BACKGROUND[3]

Amaury Seise Pubill ("Amaury") was born to Maritza Pubill on August 8, 1974. In 1992, he was incarcerated in section 308 of the Bayamón Regional Jail, then in the Juvenile Detention Center in Miramar, then in section 292 of Bayamón Regional Jail, and finally, in 1072 Annex of the Bayamón Regional Jail. On July 31, 1996, Amaury sought medical services at Correctional Health where he complained that he was suffering from malaise, loss of appetite,

---

[2] The Court referred the pending motions to U.S. Magistrate Judge Justo Arenas for a report and recommendation. The Court has carefully reviewed the magistrate judge's report and recommendation and agrees that plaintiff's claims against Dr. Madera and Dr. Curet are time barred inasmuch as nothing in the record reveals that plaintiff served Dr. Madera and Dr. Curet within the six months period established by Rule 4.3(b) of the Puerto Rico Rules of Civil Procedure. The Court, however, believes that assuming, arguendo, that plaintiff's claims against Dr. Madera and Dr. Curet are not time barred, plaintiff's claim against Dr. Madera and Dr. Curet must still be dismissed for failure to state a claim upon which relief could be granted.

[3] The facts are taken from the Fourth Amended Complaint.

Civil No. 97-2815(JAG)                                                            3

fatigue, and fever. Amaury was diagnosed as having Hepatitis C with symptoms that corresponded to the initial manifestations of AIDS. On that date, tests were ordered, Amaury was refereed to the health educator, and was instructed to return to the clinic in one month. No follow-up or special treatment was provided to Amaury. On October 31, 1996, Amaury tested positive to the HIV virus. Once again, no follow up or special treatment was provided to him.

On November 30, 1996, Amaury sought medical services again at Correctional Health. Amaury complained that he was suffering from pain in the ribs, diarrhea, vomiting and loss of appetite. The attending physician described Amaury as being "acutely" sick and as having AIDS. Amaury was given medications and admitted at Correctional Health at 7:30 p.m. until December 1 at 10:35 p.m., when he was transferred to the Bayamon Regional Hospital. Amaury arrived at the Hospital on December 2, 1996, at 12:20 a.m.. Amaury told the attending physician that he had been suffering from shortness of breath for three weeks. Medications were administered and labs and x-rays were taken. The emergency room physician also requested a consultation with Internal Medicine Services at 12:20 a.m. and received an answer to his consultation at 2:00 p.m., fourteen (14) hours after Amaury had arrived at the emergency room

Civil No. 97-2815(JAG)                                                    4

in a critical condition. On December 2, 1996, at 3:30 p.m., treatment with antibiotics was commenced. Amaury died on December 3, 1996, at 9:40 a.m.

## DISCUSSION

A.   <u>Motion to Dismiss Standard.</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of her claim which would entitle her to relief. <u>See</u> <u>Brown v. Hot, Sexy, and Safer Prods., Inc.</u>, 68 F.3d 525, 530 (1st Cir. 1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. <u>See</u> <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. <u>Aulson v. Elanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." <u>McCoy v. Massachusetts Institute of Tech.</u>, 950 F.2d 13, 22 (1st Cir. 1991). Plaintiff is responsible for putting her best foot forward in an effort to present a legal theory that

will support her claim. Id., at 23 (citing Correa Martinez, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

B. **Failure to State a claim under 42 U.S.C. § 1983 (Eight Amendment) against co-defendants Dr. Curet and Dr. Madera in their official capacity.**

With respect to plaintiff's 42 U.S.C. § 1983 claim against co-defendants Dr. Curet and Dr. Madera in their official capacity, it is well established that the Eleventh Amendment bars a section 1983 action against a State, State Agency, or any State Official in his official capacity for monetary damages that would have to be paid from the state treasury. See Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir.1995); Vega Castro v. Puerto Rico, 43 F.Supp.2d 186, 189 (D.P.R.1999). The Commonwealth of Puerto Rico enjoys the full benefits of the Eleventh Amendment. See Ursulich v. Puerto Rico Nat. Guard, 384 F.Supp. 736, 737 (D.P.R. 1974).

In the present case, although plaintiff seeks equitable and prospective relief from Dr. Curet and Dr. Madera, the facts in the

Civil No. 97-2815(JAG)                                                    6

Fourth Amended Complaint show that plaintiff is not entitled to any equitable relief. When plaintiff filed the Original Complaint, Amaury was no longer incarcerated in any Puerto Rico prison. He had died. Consequently, plaintiff's claims for prospective and equitable relief do not present a case or controversy under Article III of The United States Constitution. See Preiser v. Newkirk, 422 U.S. 395, 401-04 (1975); North Carolina v. Rice, 404 U.S. 244, 246 (1971). (Federal Courts do not have the power to decide questions that cannot affect the rights of litigants in the case before them.) Here, there is no possible expectation that any of the alleged wrongs will be repeated inasmuch as Amaury is dead and thus no longer incarcerated. Accordingly, plaintiff's 42 U.S.C. § 1983 claim against co-defendants Dr. Curet and Dr. Madera in their official capacity must be dismissed as moot.

C. **Failure to State a claim under 42 U.S.C. § 1983 (Eight Amendment) against co-defendants Dr. Curet and Dr. Madera in their personal capacity.**

1. **Plaintiff's allegations[4]**

The Eighth Amendment to the Constitution prohibits states from

---

[4] The entire discussion is taken from plaintiff's opposition to defendants motion to dismiss (Docket 99 at 19-39), and from the Fourth Amended Complaint.

Civil No. 97-2815(JAG)                                                          7

inflicting "cruel and unusual punishment" on the prisoners it confines. See Wilson v. Seiter, 501 U.S. 294, 297,(1991). "[I]t is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 831, (1994). In the present case, plaintiff avers that Dr. Curet, as the Director of Correctional Health, was "deliberately indifferent" under the Eighth Amendment toward the events that led to Amaury's death inasmuch as he was the official responsible for the adequate training, conduct and supervision of all of Correctional Health's employees. Plaintiff alleges that the policies, protocols and procedures that were established or that should have been established by Dr. Curet were inadequate and/or were not followed by the individual doctors he supervised inasmuch as Amaury was not given adequate treatment when he was first diagnosed as having Hepatitis C and possibly AIDS on July 31, 1996. On that date, tests were ordered, Amaury was referred to the health educator, and he was instructed to return to the clinic in one month. Nonetheless, no follow up or special treatment was provided to Amaury. On October 31, 1996, Amaury was diagnosed with full blown AIDS. Once again, no follow up or special treatment was

provided to him in spite of the drugs available by then to treat AIDS.

After suffering for weeks from symptoms related to his AIDS condition, Amaury was transferred to the emergency room of the Bayamon Regional Hospital on December 2, 1996. Plaintiffs aver that Dr. Madera, as the hospital administrator of the Bayamón Regional Hospital, was "deliberately indifferent" under the Eighth Amendment toward the events that led to Amaury's death inasmuch as he was the official responsible for the adequate training, conduct and supervision of the Hospital's employees. Plaintiff alleges that the policies, protocols and procedures that were established or that should have been established by Dr. Madera were inadequate and/or not followed by the individual doctors he supervised inasmuch as Amaury had to wait fifteen hours to receive the results of the lab tests performed before his arrival and to be given treatment with antibiotics.

Plaintiff concludes that these repeated negligent acts indicate systemic deficiencies in the method of providing medical care and a consistent pattern of reckless or negligent conduct that amounts to "deliberate indifference". Plaintiff further concludes that Dr. Curet and Dr. Madera's failure to train amounts to the

"deliberate indifference" standard applicable in Eighth Amendment cases inasmuch as these physicians had constructive knowledge that their subordinates engaged in a conduct that posed a substantial risk of serious harm to Amaury's health. Dr. Curet and Dr. Madera's constructive knowledge is allegedly derived from this Court's previous recognition of the serious medical problems that inmates face in Puerto Rico's correctional facilities and public hospitals. See Morales Feliciano v. Romero Barcelo, 497 F.Supp. 14, 18 (1980).

2. **Supervisory Liability under the Eighth Amendment.**

Plaintiff's conclusion is based on the same analysis that led the Supreme Court to conclude that under 42 U.S.C. § 1983 a supervisor can be held liable for failure to train his employees when the supervisor's failure amounts to a "deliberate indifference" of the constitutional rights of others. See Canton vs. Harris, 489 U.S. 378, 389 (1989). Under Canton, when the need for training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor could be found to be "deliberately indifferent." Id at 390. This objective inquiry of "deliberate indifference" allows liability to be premised on obviousness or constructive knowledge.

Civil No. 97-2815(JAG)                                                          10

Plaintiff's analysis is, however, inappropriate to determine the liability of a prison official under the Eighth Amendment. See Farmer, 511 U.S. at 841 (1994). Under Farmer, "deliberate indifference" exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official's failure to alleviate a significant risk that he should have perceived but did not is insufficient to establish an Eighth Amendment violation. Id. at 838. Accordingly, Farmer's subjective inquiry of "deliberate indifference" requires plaintiff to allege that Dr. Curet and Dr. Madera had actual knowledge that their subordinates engaged in a conduct that posed a substantial risk of serious harm to Amaury's health and that they disregarded that risk by failing to take reasonable measures to abate it. Id. at 842.

Plaintiff's Fourth Amended Complaint does not satisfy the "deliberate indifference" standard of Farmer, because it fails to specifically aver that Dr. Curet and Dr. Madera knew and acted with "deliberate indifference" to the possibility that Amaury and other AIDS patients were not given adequate treatment and medication to

prolong their lives. Thus, plaintiff's pleadings, even if liberally construed under <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), fail to state a personal-capacity claim under § 1983 since they do not allege that Dr. Curet and Dr. Madera knowingly disregarded a known harm in the alleged deprivation of Amaury's medical care.

At most, plaintiff's pleadings may give rise to a negligence claim under the local tort statute. "An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis." <u>Id</u>. at 838. (citation omitted). In sum, plaintiff has failed to state a claim against Dr. Curet and Dr. Madera for an Eighth Amendment violation for "deliberate indifference" to a serious medical need.

Although the Court is persuaded that plaintiff has failed to state a claim, the defect is one that might easily be cured by an amendment. The Court would ordinarily grant dismissal without prejudice to plaintiff's filing of an amended complaint realleging her claim. Plaintiff has already Amended the Complaint on three

occasions, however, and she has not been able to adequately plea an Eighth Amendment violation. Thus, the Court has given plaintiff more than ample opportunity to correct her defective pleading. When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do [her] homework for [her]." See McCoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting her best foot forward in an effort to present a legal theory that will support her claim. Id. at 23(citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990)). The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988). Accordingly, the Court must dismiss plaintiff's 42 U.S.C. § 1983 Eighth Amendment claim against co-defendants Dr. Curet and Dr. Madera.

D. <u>Supplemental State Claims.</u>

Supplemental state claims against co-defendants Dr. Curet and Dr. Madera are dismissed without prejudice pursuant to 28 U.S.C. §1367(c)(3), since no federal claims to ground jurisdiction remain against them.

## CONCLUSION

In light of the foregoing, the Court grants defendants' motion to dismiss (Docket Nos. 57, 70, 90) and dismisses all federal claims against co-defendants Dr. Curet and Dr. Madera with prejudice. The supplemental state claims against them are dismissed without prejudice pursuant to 28 U.S.C. §1367(c)(3).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of May 2002.

JAY A. GARCIA-GREGORY
United States District Judge