# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MARITZA PUBILL RIVERA
**Plaintiff(s)**

     **v.**　　　　　　　　　　　　　　**CIVIL NO.**　97-2815 (JAG)

ZOE LABOY ALVARADO <u>et als</u>.
**Defendant(s)**

---

## OPINION AND ORDER

Plaintiff Maritza Pubill Rivera ("Pubill") brought suit pursuant to 42 U.S.C. §1983, alleging

that defendants, several administrators in the Corrections Administration and the Department of

Health, as well as various doctors at the Bayamón Regional Hospital and the Correctional Complex

of Bayamón, violated her son, Amaury Seise Pubill's ("Amaury") Eighth Amendment right to be

free from cruel and unusual punishment. The Court has before it two motions to dismiss from co-

defendants Jellytza Maldonado-Rondón ( "Maldonado") and Dr. Ramon Rivera Schneider

("Rivera")(collectively "co-defendants")(Docket Nos. 146 &147).[1]  Pubill filed an opposition on

---

[1] On August 11, 1998, the Court granted Miguel Rivera's Motion for summary judgment (Docket No. 15). On May 15, 1998, Pubill voluntarily dismissed all claims against Zoe Laboy in her personal capacity (Docket No. 22).  On March 5, 1999, the Court issued an Opinion and Order dismissing all claims against Carmen Feliciano, Nydia Cotto-Vives and Joe Colón in their personal and official capacities and the remaining claims against Zoe Laboy in her official capacity (Docket No. 36).  On June 7, 2002, the Clerk entered default against defendant Amaury Hernandez (Docket No. 74), and subsequently enterered default judgment against him on October 6, 2000 (Docket No. 80).  On May 31, 2002, the Court granted Jose O. Curet and Jose Madera's motion to dismiss and entered judgment dismissing all claims against them (Docket Nos. 140 & 141).  On April 12, 2002 the Court mooted Pubill's request for an extension of time to serve summons upon Dr. Nessa Torres Reyes. The record does not show that Pubill ever properly served summons on her.  As a result, she never became a party to this action.



1



September 11, 2002 (Docket No. 151). Maldonado filed a reply on October 7, 2002 (Docket No. 155). For the reasons stated below, the Court grants co-defendants' motions to dismiss.[2]

## FACTUAL BACKGROUND

Amaury was first incarcerated in 1992 at the Bayamón Regional Jail, then in the Juvenile Detention Center, and finally in Annex 1072 of the Bayamón Regional Jail. On July 31, 1996, medical personnel at the Correctional Health Division diagnosed Amaury with hepatitis C. On October 31, 1996, Amaury tested positive to the HIV virus. He did not receive follow-up or special treatment following either diagnosis. On November 30, 1996, Amaury again went to Correctional Health complaining of pain in the ribs, diarrhea, vomiting and appetite loss. The attending physician described Amaury as "acutely" sick and as having AIDS. Amaury remained there until the next day, December 1, at 10:35 p.m., when he was transferred to the Bayamón Regional Hospital. He arrived shortly after midnight on December 2, 1996. Once at the hospital, medical personnel administered medication and took x-rays of Amaury. He first received antibiotics on December 2 at 3:30 p.m. Amaury died the next day at 9:40 a.m.

Pubill alleges that defendants failed to adequately treat and provide medical care for Amaury. She contends that their acts or omissions rose to the level of deliberate indifference and violated his constitutional right to be free from cruel and unusual punishment.

---

[2] Following this order, the only remaining defendant in this case will be Nilma Rosado-Villanueva. The court entered default against Rosado-Villanueva on October 22, 2002 and subsequently mooted her motion to set aside default (Docket No. 131). As to Rosado-Villanueva, the Court will schedule a default hearing in a separate Order to assess damages.

## DISCUSSION

### I. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Brown v. Hot, Sexy, and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of plaintiff. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Plaintiff is responsible for putting his best foot forward in an effort to present a legal theory that will support his claim. Id., at 23 (citing Correa Martinez, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

### II. Maldonado and Rivera's Motion to Dismiss

Co-defendants make three arguments to support their motions to dismiss: (1) that the claims against them are time-barred because Pubill included them as defendants after the statute of limitations expired; (2) that their conduct did not rise to the level of deliberate indifference; and (3) that they are immune from tort liability under 26 L.P.R.A. §4105. The Court concludes that Pubill's claims are timely under Fed. R. Civ. P. 15(c)(1) and the tolling provisions of Puerto Rico law.

3

Nonetheless, the Court finds that Pubill has failed to state a claim for cruel and unusual punishment under the Eight Amendment because the record does not demonstrate that co-defendants acted with deliberate indifference to Amaury's medical condition. Because this finding is sufficient to dispose of the case, the court need not address co-defendants' immunity arguments.

## II. Statute of Limitations

In their motions to dismiss, co-defendants allege that the claims against them are time-barred because the Fourth Amended complaint that included them as defendants does not relate back to the date of the filing of the original complaint under Rule 15(c)(3).[3]  Pubill filed her original complaint on December 2, 1997, within the one-year statute of limitations for §1983 actions.[4]  That complaint, however, referred to unnamed defendants Peter Roe, Charlie Roe, etc.  It did not include Maldonado and Rivera by name.  Instead, Pubill added them more than three years later in the Fourth Amended complaint filed on April 26, 2001 (Docket No. 104).

Pubill's argues that even if there is no relation back under Rule 15(c)(3), she can take advantage of Puerto Rico law pursuant to Rule 15(c)(1) to toll the one-year statute of limitations and

---

[3]  Rule 15(c) of the Federal Rules of Civil Procedure states in relevant part that:

An amendment of a pleading relates back to the date of the original pleading when
**(1)** relation back is permitted by the law that provides the statute of limitations applicable to the action, or
**(2)** the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
**(3)** the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

[4]  Because section 1983 lacks an accompanying federal statute of limitations, the Supreme Court has held that Courts should apply the forum state statute of limitations governing personal injury actions. See Owens v. Okure, 488 U.S. 235, 236(1989). The Puerto Rico Civil Code provides for a one-year prescriptive period for such actions. See 31 L.P.R.A. §5298(2); see also Pagan Velez v. Laboy Alvarado, 145 F. Supp.2d 146, 152 (1st Cir. 2001).

add co-defendants as joint tortfeasors. (Docket No. 151 at 28-31; Docket No.155 at 9-11.) She

maintains that the timely filing of her original complaint including Doe defendants tolled the statute

of limitations against all joint-tortfeasors such that Maldonado and Rivera could be included by

name at any time, so long as the cause of action against the originally named defendants remained

alive. Co-defendants, on the other hand, contend that even if tolling is applied, Pubill's claims

against Maldonado and Rivera are time-barred. They suggest that although the one-year prescriptive

period for §1983 actions was interrupted by Pubill's timely filing of the initial complaint, this only

tolled the claim for another year, rather than indefinitely. They argue that since Pubill filed her

Fourth Amended complaint after the one-year tolling period elapsed, the claims against them are

untimely.

Rule 15(c)(1) makes clear that if Puerto Rico law allows relation back, that law should

control to save the claim. Rivera-Ramos, 156 F.3d 276, 282(1st Cir. 1998) ("For section 1983

actions, federal law governs the date on which the cause of action accrues while the length of the

period and tolling doctrine are taken from local law.") Article 1874 of the Puerto Rico Civil Code

provides that "the interruption of prescription against one defendant also tolls the statute against any

other defendants who are solidarily liable with the first." 31 L.P.R.A. §5304(1991)[5]; see also Tokyo

Marine & Fire Ins. Co. v. Perez & Cia., de P.R., Inc., 142 F.3d 1, 4 (1st Cir. 1998). The Supreme

Court of Puerto Rico has ruled that the doctrine of solidarity allows a plaintiff to amend a complaint

to include joint torfeasors not originally included in the complaint so long as the original complaint

---

[5]  A prescriptive period under Puerto Rico law can be interrupted in one of three ways: "by the institution
of an action before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt
by the debtor." See 31 L.P.R.A. §5303.

was timely filed and the element of solidarity was well pled. Arroyo v. Hospital La Concepcion, 130 D.P.R. 596 (1992). All that is required is that the newly added tortfeasors are solidarily liable with the original defendants and that the causes of action asserted against them are identical to those alleged against the original defendants. See Rodriguez Narvaez v. Nazario, 895 F.2d 38, 44 (1990); see also Tokyo Marine, 142 F.3d at 4.

The claims against Maldonado and Rivera meet both requirements. They are solidarily liable with the originally named doctor defendants and the causes of action asserted against them are identical to those alleged in the original complaint. Physicians may be held jointly and solidarily liable for their multiple acts, omissions and events that combined to cause them, even when the actions are not contemporary. See Riley v. Rodriguez de Pacheco, 119 D.P.R. 762, 10 P.R. Offic. Trans. 806, 851-52 (1987); see also Cruz v. Centro Medico de Puerto Rico, 113 D.P.R. 719, 744, 13 P.R. Offic. Trans. 931, 960-962 (1983).

The caselaw suggests that tolling operates differently when the prescriptive period is tolled by filing a complaint versus when it is tolled by an extrajudicial claim. See generally Serrano-Strubbe v. Hernandez-Plana, No. 99-1056, 2002 U.S. Dist. Lexis 20468 at 14-17 (Magistrate Delgado's Report & Recommendation)(D.P.R. March 21, 2002); also compare Tokyo Marine, 142 F.3d at 4, with Arroyo, 130 D.P.R. 596, official translation at 9 (1992). A judicial claim, that is, the filing of a timely complaint, will toll the statute of limitations for the entire duration of the case, regardless of its outcome. In this case, Pubill's timely filing of her initial complaint tolled the statute of limitations as to all joint tortfeasors, whether named or unnamed. Any subsequent amendments to the complaint adding joint tortfeasors and alleging the same claims filed against the original defendants are consequently not time barred. Id. at 9-10.

6

In conclusion, by timely filing her initial complaint on December 2, 1997, Pubill tolled the statute of limitations as to the unnamed co-defendant joint tortfeasors. Accordingly, her claims against co-defendants Maldonado and Rivera are timely.

### III. Deliberate Indifference

Co-defendants alternatively move to dismiss on the basis that their actions did not rise to the level of deliberate indifference required to establish that medical mistreatment constitutes a violation of the Eight Amendment (Docket No. 146 at 13). Pubill contends that co-defendants recklessly and deliberately failed to provide medical attention to Amaury in compliance with the standards accepted by the medical community (Docket No. 151 at 37). For the reasons set forth below, the Court concludes that co-defendants' actions did not rise to the level of deliberate indifference and that the claims against them should be dismissed.

The Supreme Court has set forth the deliberate indifference inquiry in two seminal cases: Estelle v. Gamble, 429 U.S. 97 (1976), and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle recognized that the government's failure to provide medical care for those whom it is punishing by incarceration could constitute a violation of the Eight Amendment's mandate against cruel and unusual punishment. Estelle, 429 U.S. at 103; see also Helling v. McKinney, 509 U.S. 25 (1993). In Farmer, the Court elaborated a two-prong test to determine whether a deprivation, such as failing to attend to a prisoner's medical needs, rose to the level of a constitutional violation: (1) the alleged deprivation must be objectively sufficiently serious and, (2) the defendants must have a culpable state of mind, meaning that the defendant was deliberately indifferent to the inmate's health or safety. See Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999); Dennison v. Prison Health Services, 2002 WL 31026529 (D. Me.)(citing Farmer, 511 U.S. at 834).

Amaury's AIDS diagnosis and his condition constituted a serious medical need. <u>See</u> <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990) (holding that a serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention); <u>see also</u> <u>Muñiz-Souffront v. Laboy Alvarado</u>, 115 F. Supp.2d 237, 242 (D. P. R. 2000)("A medical need is serious if it causes extreme pain, results in death or degeneration."). To prevail on this motion to dismiss, therefore, Pubill must allege enough facts to support an inference that Maldonado and Rivera subjectively and intentionally disregarded Amaury's need for medical care.

Deliberate indifference exists when the "official knows of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837; <u>see also</u> <u>Giroux</u>, 178 F.3d at 32. "A prison official's failure to alleviate a significant risk that he should have perceived but did not is insufficient to establish an Eighth Amendment violation." <u>Pubill-Rivera</u>, 218 F Supp.2d 89, 94 (D.P.R. 2002). A wanton decision to deny or delay care may constitute deliberate indifference only if the action is reckless in the sense that it requires actual knowledge of impending harm that is easily preventable. See <u>Watson v. Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993) <i>(citing</i> <u>Wilson v Seiter</u>, 501 US 294 (1992)); <i>see also</i> <u>DesRosiers</u> <u>v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991). "The requisite state of mind may be manifested by the official's response to an inmate's known needs or by denial, delay or interference with prescribed health care." <u>Id.</u> <i>citing</i> <u>Estelle</u>, 429 U.S. at 104-5. Nonetheless, "determining the wantonness of the defendants conduct depends not upon its effects on the inmate, but rather on the practical constraints facing prison officials and doctors." <u>Muniz-Souffront</u>, 115 F. Supp.2d at 242. To establish deliberate

8

indifference, therefore Pubill must establish that Maldonado and Rivera knew that Amaury was at risk and decided not to do anything to prevent that harm from occurring even though they could have easily done so. Verser v. Elyea, 113 F Supp 2d 1211,1214 (1st Cir. 2000)

Moreover, "the courts have consistently refused to create constitutional claims out of disagreement between prisoners and doctors about the proper course of a prisoners medical treatment, or to conclude simple medical malpractice rises to the level of cruel and unusual punishment." Watson, 984 F.2d at 539-40. Without a sufficiently serious deprivation of medical care, there can be no constitutional violation. A bad attitude by a medical provider or a doctor's negligence in his choice of medications or treatment is not actionable under the Eight Amendment. See Dennison at 7; see also Daniel v. Williams, 474 U.S. 327 (1986).

Furthermore, even when a defendant knows of a substantial risk to an inmate's health or safety and he fails to prevent the harm, he may be found not liable if he responds reasonably to the risk. See Giroux, 178 F.3d at 32 *citing* Farmer, 511 U.S. at 844.

The complaint simply does not support a conclusion that there was deliberate indifference to Amaury's medical needs. The chosen course of action and treatment does not demonstrate recklessness or intentional conduct to constitute deliberate indifference. See Verser, 113 F. Supp.2d at1214-15); see also Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 65-66 (1st Cir. 2002); Miranda v. Munoz, 770 F.2d 255 (1st Cir. 1985). Once Amaury was admitted at the Bayamón Regional Hospital, the medical staff took x-rays and administered antibiotics. The fact that it took them several hours to do so is insufficient to presume that Maldonado and Rivera had the recklessness or the intentionality needed to surmise that they deliberately deprived Amaury of the medical attention he deserved. See Verser, 113 F, Supp.2d at1214-15 (citing Snipes v. De Tella, 95 F.3d 586, 591 (7th

Cir. 1996) (a prisoner does not have a constitutional right to choose his treatment, and a court will

not second guess matters of professional judgment)); see also Navedo v. Malloney, 172 F. Supp. 2d

276, 285 (D. Mass. 2001).  Pubill has not established that the chosen course of conduct was

unreasonable and nothing suggests that the medical judgment in this case was misguided or that

treatment was recklessly and deliberately refused.  Watson, 984 F.2d at 540.  The medical care that

plaintiff establishes in her complaint was provided to Amaury at the Bayamón Regional Hospital,

does not appear to be grossly inadequate to constitute a knowing denial of medical care required to

establish a constitutional violation.  Des Rosiers, 949 F.2d at 20.  The complaint fails to specifically

aver that co-defendants knowingly disregarded a known harm and thus acted with deliberate

indifference to Amaury.  Pubill, 218 F. Supp.2d at 94.  Proving that co-defendants could have done

more in terms of treating Amaury is insufficient to establish that they were deliberately indifferent

to Amaury's medical needs.  See Navedo, 172 F. Supp. 2d at 285.

Additionally, it is noteworthy that Maldonado and Rivera did not play a significant role in

the decisions regarding Amaury's treatment. See generally Pelletier v. Magnusson, 201 F. Supp.2d

148 (1st Cir. 2002) (Holding that medical doctor was not liable for inmate's suicide because he did

not have a significant role in the mental health treatment of the inmate despite being director of

medical services and having personally treated inmate).  Maldonado was a first-year medical resident

student from the Universidad Central del Caribe. (Docket No. 46 at 12).  Rivera was the attending

physician in charge of several residents at the Hospital.  To establish a constitutional violation, a

plaintiff must establish that each co-defendant's acts or omissions deprived the victim of his

protected rights.  Muniz-Souffront, 116 F. Supp.2d at 241.  The facts alleged in the complaint simply

do not meet this level of specificity.

The allegations in the complaint, even when viewed in the light most favorable to plaintiff, fail to establish that co-defendants acted with deliberate indifference to trigger a constitutional violation.

## CONCLUSION

In light of the foregoing, the Court GRANTS defendant's motion to dismiss (Docket Nos. 146 and 147) and dismisses all federal claims against co-defendants Maldonado-Rondón and Rivera Schneider with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico this 9th day of January, 2003.

JAY A. GARCIA-GREGORY
U.S. District Judge

11